MERILLAT v MICHIGAN STATE UNIVERSITY

Docket No. 143849. Submitted March 8, 1994, at Lansing. Decided
    May 19, 1994; approved for publication October 11, 1994, at
    9:10 A.M.

    Vicki J. Merillat brought an action in the Ingham Circuit Court
    against Michigan State University and Bruce L. Benson, direc-
    tor of the university's Department of Public Safety (DPS), seek-
    ing both damages for her discharge as a DPS dispatcher and
    reinstatement to that position with back pay and seniority. The
    plaintiff alleged that, following her romantic involvement with
    a DPS supervisor, she was ordered by defendant Benson to
    undergo physical and psychological examinations to determine
    her fitness as a dispatcher, that she submitted to the physical
    examination, that she twice presented herself for a psychologi-
    cal examination, that a psychological examination was not
    administered because she refused to complete a questionnaire
    and execute a written release, that she was suspended without
    pay until she attended another psychological examination and
    signed all the required releases and waivers, and that she was
    terminated for insubordination when she failed to execute the
    requested releases and waivers. The plaintiff further alleged
    that she was ordered to take the psychological examination
    because the defendants believed her to be mentally or emotion-
    ally impaired, that that perceived handicap was unrelated to
    her ability to perform her duties as a dispatcher, and that any
    findings of the ordered psychological examination would have
    been unrelated to her job performance. The plaintiff claimed
    that the defendants' conduct constituted prohibited discrimina-
    tion under both the Handicappers' Civil Rights Act and the
    Civil Rights Act. The trial court, Thomas L. Brown, J., granted
    summary disposition for the defendants, finding that the plain-
    tiff's discharge was for insubordination because she refused to
    submit to the psychological examination and not because of any
    perceived handicap and that she failed to show that she was
    treated any differently than any other employee who refused to
    submit to psychological evaluation. The plaintiff appealed.

    The Court of Appeals held:

    1. A motion for summary disposition under MCR 2.116(C)(8)

for failure to state a claim tests the legal sufficiency of the claim and is decided by reference to the pleadings alone.

2. The plaintiff alleged that the defendants perceived her to have a handicap, that the perceived handicap was unrelated to her ability to perform her duties as a dispatcher, and that the ordered psychological examination was unrelated to her job performance. Those allegations were sufficient to constitute a prima facie showing of prohibited discrimination under § 202(1)(e) of the Handicappers' Civil Rights Act, MCL 37.1202(1)(e); MSA 3.550(202)(1)(e). Accordingly, trial court erred in granting summary disposition for the defendants with respect to the plaintiff's claim under the Handicappers' Civil Rights Act.

3. Although the plaintiff alleged that she was a member of protected classes, she being white, female, and unmarried, and that no DPS employee who was African-American or male had been terminated for insubordination, she failed to allege that any other person had refused to undergo psychological evaluation in defiance of an order of the defendants. Accordingly, the plaintiff failed to show disparate treatment, and the trial court properly granted summary disposition for the defendants with respect to the plaintiff's counts under the Civil Rights Act.

Affirmed in part, reversed in part, and remanded.

*Abood, Abood & Rheaume, P.C.* (by *Michael J. Otis*), for the plaintiff.

*Michael J. Kiley,* for the defendants.

Before: HOOD, P.J., and NEFF and T. E. JACKSON,* JJ.

PER CURIAM. This case involves a claim of unlawful discrimination, and stems from defendants' decision to terminate plaintiff from its employ. The trial court granted summary disposition in favor of defendants pursuant to MCR 2.116(C)(8); plaintiff appeals as of right. We affirm in part and reverse in part.

Plaintiff, a white female, was employed by defendant Michigan State University as a dispatcher in

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

the Department of Public Safety (DPS) from 1984 until 1990. During the course of her employment, plaintiff became romantically involved with a married DPS supervisor, who was African-American. The African-American supervisor's wife, who also worked in the DPS, was white. At least two internal investigations were conducted within the DPS in order to ascertain whether plaintiff and the supervisor indeed were engaged in an amorous relationship; these investigations were inconclusive.

In March of 1990, the director of the DPS, defendant Bruce Benson, ordered plaintiff to undergo a physical and psychological examination to determine her fitness for continued duty as a dispatcher. A subsequent physical examination failed to disclose any condition that would prevent plaintiff from performing her duties as a dispatcher. Plaintiff twice made herself available for the psychological evaluation; however, the examination was not conducted, because plaintiff would not agree to complete an accompanying questionnaire and execute a written release. On August 24, 1990, upon returning to the DPS, plaintiff was informed that she was suspended without pay until such time as she attended another evaluation and signed all releases and waivers requested by the doctor. Plaintiff failed to do so and was terminated for insubordination on September 7, 1990.

In a three-count amended complaint, plaintiff alleged that defendants' conduct was discriminatory pursuant to the Handicappers' Civil Rights Act (HCRA), MCL 37.1101 *et seq.*; MSA 3.550(101) *et seq.*, and the Civil Rights Act (CRA), MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.* More specifically, plaintiff claimed that defendants' conduct was contrary to the provisions of the HCRA because the defendants were motivated by a perceived risk of

future harm due to unknown handicaps. Plaintiff
additionally claimed that defendants had violated
the CRA, because the disciplinary action imposed
against her was more severe because of the fact
that she was single, white, and female.

In their amended answer, defendants admitted
that investigations were conducted into plaintiff's
relationship with certain co-workers. These investi-
gations were initiated by Benson and were predi-
cated on his belief that plaintiff "suffered from
some form of psychological and/or emotional prob-
lem(s) which was affecting her work performance."
Benson's belief stemmed from his personal obser-
vations of plaintiff, statements made by plaintiff,
and statements made by co-workers about plaintiff.
Defendants admitted that Benson had no "evi-
dence" that plaintiff was unable to perform her
duties as a dispatcher.

The trial court granted defendants' subsequent
motion for summary disposition pursuant to MCR
2.116(C)(8). The court reasoned that because plain-
tiff refused the psychological examination(s), defen-
dants never ascertained whether she was in fact
handicapped. Thus, according to the trial court,
defendants did not terminate plaintiff on the basis
of a handicap but, rather, because she had refused
to undergo the psychological evaluation. The trial
court further stated that plaintiff could not rely on
the provisions of the HCRA, because she failed to
assert a handicap.

Additionally, the trial court determined that
plaintiff had not stated a cognizable claim under
the CRA, because she had failed to show that
defendants acted differently toward her than it
would have toward any other employee who, like
plaintiff, had refused to undergo an ordered psy-
chological evaluation. Finally, the trial court
stated that plaintiff had failed to allege intentional

discrimination by a showing of defendants' predisposition to discriminate against members of a certain class.

A motion for summary disposition under MCR 2.116(C)(8) for failure to state a claim tests the legal sufficiency of a claim and is decided only by reference to the pleadings. *Dockweiler v Wentzell,* 169 Mich App 368, 371-372; 425 NW2d 468 (1988). Unless the claim is so clearly unenforceable as a matter of law that no factual development could justify recovery, the motion should be denied. *Id.* This Court will review a summary disposition determination de novo. *Borman v State Farm Fire & Casualty Co,* 198 Mich App 675, 678; 499 NW2d 419 (1993).

Generally, in order to establish a prima facie case of discrimination under the HCRA, it must be alleged that (1) the plaintiff is "handicapped" as defined in the HCRA, (2) the handicap is unrelated to the plaintiff's ability to perform the duties of a particular job, and (3) the plaintiff has been discriminated against in one of the ways set forth in the statute. See *Ashworth v Jefferson Screw Products, Inc,* 176 Mich App 737; 440 NW2d 101 (1989).

As amended, § 103(e) of the HCRA, MCL 37.1103(e); MSA 3.550(103)(e), sets forth the following definition:

"[H]andicap" means 1 or more of the following:

(i) A determinable physical or mental characteristic of an individual, which may result from disease, injury, congenital condition of birth, or functional disorder, if the characteristic:

(A) For purposes of article 2, substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position or substantially limits 1 or more of the major life activities of that individual and is unre-

lated to the individual's qualifications for employment or promotion.

\* \* \*

(iii) *Being regarded as having a determinable physical or mental characteristic described in subparagraph (i).* [Emphasis added.]

Clearly, when the act, in describing prohibited behavior, speaks of discrimination by an employer against an individual because of a handicap, this includes an individual who, while not handicapped, is regarded as having a handicap. *Sanchez v Lagoudakis,* 440 Mich 496, 506; 486 NW2d 657 (1992).

In her complaint, plaintiff alleged that defendants ordered her to undergo the subject physical and psychological examinations because of a perceived handicap. Plaintiff further claimed that defendants had no evidence to suggest that she was unable to perform her duties as a dispatcher because of a physical or psychological problem. To the contrary, plaintiff alleged that until the time of her dismissal, she had demonstrated her ability to successfully perform her duties as a dispatcher. Finally, plaintiff contended that these examinations were irrelevant, because they had no bearing on whether she could discharge her duties as a dispatcher in a satisfactory manner.

Plaintiff's complaint specifically alleged that defendants perceived her to be mentally or emotionally impaired. Defendants' perception of plaintiff as mentally unstable falls within the amended statutory definition of "handicap." *Sanchez, supra;* HCRA § 103(e)(iii). Hence, plaintiff's pleadings satisfied the first element of a prima facie case under the HCRA. *Ashworth, supra.* Next, plaintiff alleged that the perceived handicap was unrelated to the performance of her duties as a dispatcher. Plaintiff

added that, until her dismissal, she had demonstrated her ability to satisfactorily perform her duties as a dispatcher. This satisfies the second element of a prima facie case under the HCRA. *Id.*

Finally, § 202(1)(e), MCL 37.1202(1)(e); MSA 3.550(202)(1)(e), precludes an employer from discharging or taking other discriminatory action against an individual on the basis of physical or mental examinations that are not directly related to the requirements of the specific job. Plaintiff's complaint alleged that her dismissal was based on a failure to undergo a psychological examination that was not related to the requirements of the dispatcher position in question. Defendants contend that plaintiff was not dismissed on the basis of results obtained following a psychological examination, but rather because she refused to undergo the evaluation.

Again, the language of § 202(1)(e) prevents an employer from discharging an employee "*on the basis of*" physical or mental examinations that are not directly related to the requirements of a specific job. Had plaintiff taken and "failed" the psychological examination, she clearly would have been able to assert a cause of action under the HCRA if defendants had discharged her on that basis and the exam was unrelated to the requirements of her job. However, in this case, plaintiff did not "fail" the ordered psychological examination. A liberal construction of the provisions of the HCRA will not allow us to permit a plaintiff that has been discharged after "failing" an alleged irrelevant physical or psychological examination to assert a cause of action, yet preclude that same plaintiff from doing so upon being discharged for refusing to submit to the same.

At issue here is the basis upon which defendants' decision to terminate plaintiff was predi-

cated. Plaintiff asserted that defendants' decision to terminate her was based on her failure to undergo a psychological evaluation that was wholly unrelated to the performance of her job. This allegation, which set forth a specified act of discrimination under the statute, was sufficient to satisfy the third element of plaintiff's prima facie case. Section 202(1)(e); *Ashworth, supra.*

Plaintiff's pleadings set forth a prima facie case of discrimination under the HCRA. *Id.; Sanchez, supra.* Accordingly, the trial court erred in granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(8), because her claim under the HCRA was not clearly unenforceable as a matter of law. *Wentzell, supra.*

Next, plaintiff alleges in counts II and III of her complaint that defendants violated the CRA by taking disciplinary action against her that was more severe than the actions taken against the African-American supervisor and his wife. Plaintiff further alleges that at no time in the past has insubordination been a basis for termination against any African-American employee of the DPS. Plaintiff claims that defendant discriminated against her on the basis of her race, marital status, and sex.

To make a prima facie case of discrimination under the theory of disparate treatment, it must be shown that a plaintiff was a member of the class entitled to protection and was treated differently from members of a different class for the same or similar conduct. *Dixon v W W Grainger, Inc,* 168 Mich App 107, 114; 423 NW2d 580 (1987). Here, plaintiff did allege that she was a member of protected classes—namely, that she was white, unmarried, and female. Thus, plaintiff's allegations satisfied the first prong of the theory of disparate treatment.

Plaintiff further alleged that insubordination had never been a cause for termination against any employee of the DPS who happened to be African-American or male. However, plaintiff did not allege facts to show that any person or persons in these three groups had ever failed to undergo an ordered physical or psychological evaluation. Moreover, plaintiff failed to allege facts to indicate that defendants ever had reason to order any person from one of these three groups to undergo a psychological evaluation. Thus, plaintiff has not shown that she was treated differently from members of a different class for the same or similar conduct. Therefore, the trial court did not err in granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(8), because plaintiff failed to establish a prima facie case of discrimination under the CRA. *Dixon, supra.*

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.