STEVENS v INLAND WATERS, INC

Docket No. 177140. Submitted September 17, 1996, at Detroit. Decided November 22, 1996, at 9:20 A.M. Leave to appeal sought.

Charles E. Stevens brought an action in the Wayne Circuit Court against Inland Waters, Inc., and Benjamin Rusch, alleging violation of the Michigan Handicappers' Civil Rights Act (HCRA) as a result of the termination of his employment as a security guard with Inland Waters by Rusch, the plaintiff's supervisor, on the basis of the plaintiff's smoking and addiction to nicotine. The court, Pamela R. Harwood, J., granted summary disposition for the defendants, finding that smoking and nicotine addiction is not a handicap within the meaning of the HCRA. The plaintiff appealed.

The Court of Appeals *held*:

The trial court did not err in granting summary disposition for the defendants.

1. An individual's condition must substantially limit at least one of the individual's major life activities to fall within the HCRA's definition of a handicap.

2. Whether an impairment substantially limits a major life activity is determined in light of the nature and severity of the impairment, its duration or expected duration, and its permanent or expected permanent or long-term effect.

3. An impairment that interferes with an individual's ability to do a particular job, but does not significantly decrease that individual's ability to obtain satisfactory employment elsewhere, does not substantially limit the major life activity of working.

4. The plaintiff's smoking and addiction to nicotine did not substantially limit his life's major activities of caring for himself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, or working. The plaintiff did not provide evidence of any permanent or long-term effect of his alleged impairment. If the alleged impairment had any effect on the plaintiff's ability to perform the job of a security guard at Inland Waters, it did not significantly decrease his ability to find satisfactory employment elsewhere.

Affirmed.

1. CIVIL RIGHTS — HANDICAPPERS' CIVIL RIGHTS ACT — WORDS AND PHRASES — "HANDICAP" — "MAJOR LIFE ACTIVITIES."

An individual's condition must substantially limit at least one of the individual's major life activities to fall within the meaning of a "handicap" as defined by the Handicappers' Civil Rights Act; "major life activities" are functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, or working (MCL 37.1103[e][i][A]; MSA 3.550[103][e][i][A]).

2. CIVIL RIGHTS — HANDICAPPERS' CIVIL RIGHTS ACT — HANDICAP — MAJOR LIFE ACTIVITIES.

Whether an impairment substantially limits a major life activity and qualifies as a "handicap" under the Handicappers' Civil Rights Act is determined in light of the nature and severity of the impairment, its duration or expected duration, and its permanent or expected permanent or long-term effect; an impairment that interferes with an individual's ability to do a particular job, but does not significantly decrease the individual's ability to obtain satisfactory employment elsewhere, does not substantially limit the major life activity of working (MCL 37.1103[e][i][A]; MSA 3.550[103][e][i][A]).

*Allen J. Counard, P.C.* (by *Charles A. Butler*), for the plaintiff.

*Jaffe, Raitt, Heuer & Weiss, P.C.* (by *Thomas H. Williams*), for the defendants.

Before: WAHLS, P.J., and FITZGERALD and L. P. BORRELLO,* JJ.

WAHLS, P.J. Plaintiff appeals as of right from the trial court's grant of defendants' motion for summary disposition in this case brought under the Michigan Handicappers' Civil Rights Act (HCRA), MCL 37.1101 *et seq.*; MSA 3.550(101) *et seq.* The trial court granted defendants' motion on the basis that smoking is not a handicap within the meaning of the HCRA and specifically that "[nicotine] addiction is [not] synonymous with handicap." We affirm.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Plaintiff began working as a security guard with defendant Inland Waters, Inc., in September 1983. Defendant Benjamin Rusch became plaintiff's supervisor. Although plaintiff admitted that he knew that smoking was prohibited in the guardhouse, he disputed whether Inland Waters had a general policy against smoking by its employees. In October 1992, there were two incidents in which Rusch called plaintiff at work and asked plaintiff if he was smoking. Plaintiff answered in the affirmative both times. After the first incident, plaintiff received an "Employee Warning Report" stating that there was no smoking on company property. Plaintiff alleges that, the night after the second incident, Rusch told him that he wanted only nonsmoking guards at the company and that he wanted plaintiff to quit smoking entirely whether on or off the job. When plaintiff responded that he had a constitutional right to smoke, Rusch terminated plaintiff's employment.

Plaintiff argues that the trial court erred in granting defendants' motion for summary disposition. We disagree. In reviewing a trial court's decision regarding a motion for summary disposition brought pursuant to MCR 2.116(C)(10), this Court examines all relevant affidavits, depositions, admissions, and other documentary evidence and construes the evidence in favor of the nonmoving party. *Sanchez v Lagoudakis (On Remand)*, 217 Mich App 535, 539; 552 NW2d 472 (1996). The Court then determines whether a genuine issue of material fact exists on which reasonable minds could differ. *Id.* We review de novo a trial court's grant or denial of a motion for summary disposition. *Id.*

Section 202(1)(b) of the HCRA, MCL 37.1202(1)(b); MSA 3.550(202)(1)(b), provides that an employer shall not "[d]ischarge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position." *Sanchez, supra*, p 539. To establish a prima facie case of discrimination under the HCRA, it must be shown that (1) the plaintiff is "handicapped" as defined in the HCRA, (2) the handicap is unrelated to the plaintiff's ability to perform the duties of a particular job, and (3) the plaintiff has been discriminated against in one of the ways set forth in the statute. *Id.* The HCRA defines a "handicap" for purposes of this statute as a "determinable physical or mental characteristic of an individual . . . if the characteristic . . . substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position or substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's qualifications for employment or promotion." MCL 37.1103(e)(i)(A); MSA 3.550(103)(e)(i)(A).[1]

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Sanchez, supra*, p 540. The first criterion in determining intent is the specific language of the statute. *Id.* Courts may not speculate about the probable intent of the Legislature beyond the words

---

[1] The definition of handicap also includes a history of such determinable physical or mental characteristic and being regarded as having such a determinable physical or mental characteristic. MCL 37.1103(e)(ii) and (iii); MSA 3.550(103)(e)(ii) and (iii).

expressed in the statute. *Id.* If the plain and ordinary meaning of the language is clear, judicial construction is normally neither necessary nor permitted. *Id.*

Under the plain language of the HCRA, to fall within the definition of a handicap, an individual's condition must substantially limit at least one of his major life activities. *Chmielewski v Xermac, Inc,* 216 Mich App 707, 714; 550 NW2d 797 (1996). However, the statute does not further define the terms "substantially limits" or "major life activity." Nevertheless, we may turn to two federal statutes for guidance in defining these terms.

The purpose of the HCRA is similar to the purposes of the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq.,* and the Rehabilitation Act of 1973, 29 USC 701 *et seq.* The purpose of the HCRA is to ensure that all persons be accorded equal opportunities to obtain employment, housing, and the utilization of public accommodations, services, and facilities. *Adkerson v MK-Ferguson Co,* 191 Mich App 129, 137; 477 NW2d 465 (1991). This is echoed in the Rehabilitation Act's stated desire "to empower individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society, through . . . the guarantee of equal opportunity." 29 USC 701(b)(1)(F). Similarly, the ADA was enacted to eliminate discrimination against people with disabilities and to create causes of action for qualified people who have faced discrimination. *In re Torrance P,* 187 Wis App 2d 10, 16; 522 NW2d 243 (1994).

In addition to the similarity of purpose, the HCRA, the Rehabilitation Act, and the ADA share definitional similarities. Under the ADA, the term "disability" means

"a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 USC 12102(2). Similarly, under the Rehabilitation Act, 29 USC 706(8)(b)(i), a handicapped individual is a person who "has a physical or mental impairment which substantially limits one or more of such person's major life activities."[2] The HCRA's definition of "handicap," the Rehabilitation Act's definition of "handicap," and the ADA's definition of "disability" all share the requirement that a handicap or disability must be a condition that "substantially limits" one or more of a person's "major life activities." See *Sanchez v Lagoudakis*, 440 Mich 496, 504, n 25; 486 NW2d 657 (1992) (stating that the ADA's definition of "disability" is similar to the Rehabilitation Act's definition of "handicap"). Because of the similarity in purpose and the similarity in definitions, we believe it is appropriate to look to the Rehabilitation Act and the ADA for guidance in interpreting the terms "substantially limits" and "major life activities" under the HCRA. See *In re Subpoena Duces Tecum to the Wayne Co Prosecutor*, 191 Mich App 90, 94; 477 NW2d 412 (1991); see also *Pulver v Dundee Cement Co*, 445 Mich 68, 75; 515 NW2d 728 (1994).

For purposes of both the ADA and the Rehabilitation Act, administrative regulations define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 CFR

---

[2] Like the HCRA's definition, the definition of a handicapped person or a person with a disability under the ADA and the Rehabilitation Act also includes a person with a record of such an impairment or that is regarded as having such an impairment. 42 USC 12102(2)(B) and (C); 29 USC 706(8)(B)(ii) and (iii).

1630.2(i); *Dutcher v Ingalls Shipbuilding*, 53 F3d 723, 726 (CA 5, 1995); *Jasany v United States Postal Service*, 755 F2d 1244, 1248 (CA 6, 1985). Whether an impairment substantially limits a major life activity is determined in light of (1) the nature and severity of the impairment, (2) its duration or expected duration, and (3) its permanent or expected permanent or long-term effect. 29 CFR 1630.2(j)(2)(i)-(iii); *Dutcher, supra*, p 726. An impairment that interferes with an individual's ability to do a particular job, but does not significantly decrease that individual's ability to obtain satisfactory employment elsewhere, does not substantially limit the major life activity of working. 29 CFR 1630.2(j)(3)(i); *Dutcher, supra*, p 727; *Jasany, supra*, p 1248; see *E E Black, Ltd v Marshall*, 497 F Supp 1088, 1099-1101 (D Hawaii, 1980). We adopt these definitions and holdings for purposes of interpreting the HCRA.

Here, even if plaintiff's addiction to nicotine affected his "ability to choose not to smoke" and limited his "body's ability to be without discomfort when not smoking," it did not substantially limit his life's major activities. His smoking and addiction to nicotine did not interfere with caring for himself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, or working. Plaintiff has not provided evidence of any permanent or long-term effect of his alleged impairment. If this alleged impairment had any effect on his ability to perform the job of a security guard at Inland Waters, it did not significantly decrease his ability to find satisfactory employment elsewhere.

Plaintiff's argument that nicotine addiction is like alcoholism ignores the fact that alcoholism is

included in the HCRA's definition of a "handicap," whereas nicotine addiction is not. MCL 37.1103(f)(ii); MSA 3.550(103)(f)(ii). Similarly, plaintiff has provided no support for his assertion that Governor John Engler vetoed a bill prohibiting discrimination against people for using tobacco outside the work environment because of a belief that discrimination against smokers was already prohibited by the HCRA. Indeed, plaintiff's argument that the Legislature was ignorant of the legal effect of the HCRA contradicts the well-established presumption that, when enacting a law, a Legislature has knowledge of existing laws regarding that subject. *Lumley v Univ of Michigan Bd of Regents*, 215 Mich App 125, 129-130; 544 NW2d 692 (1996).

As was the case in *Chmielewski, supra,* p 715, plaintiff's claimed "handicap" is shared by countless other individuals in the workplace and in society as a whole. To automatically label this condition as one that substantially impairs a major life activity is inconsistent with the HCRA and would do a gross disservice to the truly handicapped. *Id.* Accordingly, the trial court did not err in granting defendants' motion for summary disposition. *Id.*; *Dutcher, supra,* pp 726-727; *Jasany, supra,* pp 1248-1250.

Affirmed.